IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 07-00310 SOM/KSC |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER GRANTING UNITED STATES' |
| vs. | ) | PETITION TO ENFORCE SUMMONSES |
| | ) | |
| MORGAN LIDDELL, and DELIA VALENTIN, | ) ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

ORDER GRANTING UNITED STATES' PETITION TO ENFORCE SUMMONSES

I.   INTRODUCTION.

On June 8, 2007, the Government filed a petition to enforce IRS summonses ("Petition") served on Morgan Liddell, Delia Valentin, and Eco Financial Corporation (collectively, "Respondents"). On July 24, 2007, Magistrate Judge Kevin S.C. Chang issued Findings and a Recommendation that this court grant the Petition ("F&R"). Respondents timely filed objections to the F&R. After de novo review, the court adopts the F&R and grants the Government's petition to enforce the summonses without holding an evidentiary hearing.

II.   STANDARD OF REVIEW.

The court reviews de novo those portions of the F&R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendation made by the Magistrate Judge. The court may also receive further evidence on the matter or recommit it to the Magistrate Judge with

instructions.  The court may accept those portions of the Magistrate Judge's findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rules 72.5 and 74.2; Int'l Longshore & Warehouse Union, Local 142, AFL-CIO v. Foodland Super Market Ltd., 2004 WL 2806517, *1 (D. Haw. Sept. 15, 2004); Stow v. Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003), aff'd, 389 F.3d 880 (9th Cir. 2004); Abordo v. State of Hawaii, 902 F. Supp. 1220 (D. Haw. 1995); see also Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974).

III.    BACKGROUND.

Respondents do not object to the "Background" section of the F&R.  See Findings and Recommendation to Grant Petition to Enforce IRS Summonses (July 24, 2007) at 3-5.  That background is adopted and incorporated herein and supplemented as set forth below.

IV.     ANALYSIS.

To obtain enforcement of a summons, the Government must establish a prima facie case for enforcement.  United States v. Powell, 379 U.S. 48, 57-58 (1964).  To do so, the Government must show that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the Government's

2

possession; and (4) satisfies all administrative steps required by the United States Code.  Id.  The Government's burden is "slight" and generally can be met by a sworn declaration of the revenue agent who issued the summons stating that the Powell requirements have been met.  Fortney v. United States, 59 F.3d 117, 120 (9th Cir. 1995).  Once the Government has met its burden, the taxpayers face a "heavy" burden of showing an "abuse of process" or "lack of institutional good faith."  Id.  "The taxpayer must allege specific facts and evidence to support his allegations."  Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1392 (9th Cir. 1985); accord United States v. Jose, 131 F.3d 1325, 1328 (9th Cir. 1997).

"If the taxpayer is able to make a sufficient showing of bad faith on the Government's part, the taxpayer is entitled to a limited evidentiary hearing."  United States v. Samuels, Kramer & Co., 712 F.2d 1342, 1346-47 (9th Cir. 1983).  A district court may use an evidentiary hearing to determine whether further discovery into the "bad faith" of the Government is necessary.  See United States v. Church of Scientology of Cal., 520 F.2d 818, 825 (9th Cir. 1975).  Contrary to Respondents' representations, more than a "thin allegation of bad faith" is necessary before this court must hold an evidentiary hearing.  An evidentiary hearing "need not be ordered by the district court unless the party resisting enforcement of the summons first provides a

3

'minimal amount of evidence' that the summons was not issued for any legitimate purpose." United States v. Tanoue, 94 F.3d 1342, 1345 (9th Cir. 1996) (quoting United States v. Stuckey, 646 F.2d 1369, 1372 (9th Cir. 1981)).  "[S]uch a showing requires that the party provide specific facts and evidence, and not mere 'conclusory allegations,' that the summons was issued in bad faith." Tanoue, 94 F.3d at 1345 (quoting Church of Scientology of California, 520 F.2d at 824-25).

　　　　The Government has satisfied its slight burden under Powell.  The Government has submitted a declaration of Revenue Agent Debra Tsuha stating that: (1) she is conducting an investigation to determine the federal income tax liabilities of Morgan Liddell and Delia Valentin for the tax years ending December 31, 2002, and December 31, 2003, Declaration of Revenue Agent Debra Tsuha (June 8, 2007) ¶ 2; (2) the testimony, books, records, papers, and other data sought by the summonses may be relevant to this inquiry, see id. ¶¶ 3-5, 22; (3) the information sought in the summonses is not already in the Government's possession, see id. ¶ 11; and (4) all administrative steps required by the Internal Revenue Code have been followed, see id. ¶ 24.  Tsuha's declaration is therefore sufficient to satisfy the Powell test.  See Lidas, Inc. v. United States, 238 F.3d 1076, 1082 (9th Cir. 2001) ("Courts have consistently recognized that

declarations or affidavits by IRS directors or agents generally satisfy the Powell requirements.").

>   A.   Respondents Fail to Show by Specific Facts, as Opposed to Conclusory Allegations, that the Government is Proceeding in Bad Faith or for Some Illegitimate Purpose.

Respondents argue that the Government has failed to meet its minimal burden because Tsuha's declaration is "flawed" and "not credible." Appeal of Findings and Recommendation to Grant Petition to Enforce IRS Summons (Aug. 9, 2007) at 2. The court disagrees. Although Respondents claim to have "clearly identified material omissions, misstatements and errors" in Tsuha's declaration, that claim amounts to little more than Respondents' opinions and speculation. Respondents fail to allege specific facts and evidence to support their allegations of bad faith. See Jose, 131 F.3d at 1328; Liberty Fin., 778 F.2d at 1392. Respondents make no showing of bad faith entitling them to an evidentiary hearing on the matter. See Tanoue, 94 F.3d at 1345; Samuels, Kramer & Co., 712 F.2d at 1346-47.

In arguing that the Government is proceeding in bad faith, Respondents claim that, rather than conducting an investigation to determine their federal income tax liabilities for 2002 and 2003, the Government is actually using the civil summons process to investigate them for criminal charges. Respondents point to a summons the Government issued to Equifax that requested Respondents' credit histories (Ex. 7 to

5

Opposition), saying that, because that summons was not limited to the tax years of 2002 and/or 2003, the Government must be criminally investigating them.  Respondents also speculate that, because the Government is examining offshore, tax-avoidance accounts, the Government might be conducting a criminal tax evasion investigation.  Such rank speculation does not indicate that the Government is actually criminally investigating Liddell or Valentin, as the information potentially available from Equifax or about the offshore accounts may be relevant to the Government's determination of Respondents' tax liabilities for 2002 and 2003.  Pursuant to 26 U.S.C. § 7602, the Government is authorized to summon individuals and require them to produce "such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material" to a proper inquiry.  The use of the words "may be" in the statute "reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation." United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984).

Moreover, the Equifax summons gives this court no reason to doubt Tsuha's statement that "No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to Morgan Liddell or Delia Valentin for the tax years ending December 31, 2002 and December 31, 2003."  Tsuha Decl. ¶ 23.  Respondents speculate that there may be such a criminal

referral for other years.  This speculation, however, provides no basis for this court to decline to enforce the summonses, as it is not evidence of the Government's bad faith or of some other inappropriate use of the summons process.

Respondents similarly argue that the summonses issued to them cannot be for the stated purpose of determining their tax liabilities for 2002 and 2003 because some of the items requested in the summonses pertain to matters in other years.  A request for information for years other than 2002 and 2003, however, does not indicate that the Government is actually conducting a criminal investigation of Respondents.  Information for other tax years may be relevant to the Government's determination of Respondents' tax liabilities for 2002 and 2003.  See Arthur Young & Co., 465 U.S. at 814.

Respondents have also failed to show that the Government is attempting to "punish them for standing behind their rights as taxpayers" because the Government's investigation "far surpasses what is necessary."  Opposition at 8.  Respondents demonstrate no facts that actually indicate that the Government is abusing them through the summons process or that any information sought is necessarily superfluous.  Instead, Respondents merely provide the court with conclusory allegations that are an insufficient basis to excuse noncompliance with the summonses.

7

Respondents next say that the Government's bad faith is demonstrated by its attempt to use the summons process to request information that is already in its possession. Opposition at 10. However, in Tsuha's second declaration, she details what the Government has in its possession. For example, Respondents claim that the Government already has documents from IndyMac Bank because the Government issued a third-party summons to IndyMac Bank. Tsuha explains that, when she did her original declaration, IndyMac Bank had not yet indicated to the Government that it provided a loan to Respondents in 2005. Second Declaration of Revenue Agent Debra Tsuha (July 11, 2007) ¶ 5. Tsuha says that she inadvertently failed to note that the Government has monthly statements for June 2002 through May 2003 for Respondents' MasterCard ending in "97," but notes that the Government received no documents from MasterCard International. Id. She says that, although First Hawaiian Bank disclosed that it had accounts for Respondents, it provided no documents. Id. She says that the Government did receive credit reports from Equifax. Id. Given this clarification, the Government has indicated that it is no longer seeking information about the IndyMac loan or the MasterCard ending in "97" for June 2002 through May 2003. See United States' Response to Appeal (Aug. 13, 2007) at 10. Respondents do not meet their burden of demonstrating that the Government is presently requesting

information already in the Government's possession.  See Liberty Fin., 778 F.2d at 1392-93 (placing burden on party responding to Government's summons to demonstrate that the Government already had information in its possession).

Respondents argue that Tsuha's second declaration demonstrates the Government's bad faith in issuing the summonses. The court disagrees.  Respondents say that, in Tsuha's original declaration, she stated that the Government was already in possession of documents pertaining to disbursement and receipt of loan funds for the IndyMac Bank loan.  However, in her second declaration, she states that the Government had not received documents from IndyMac Bank that were responsive to the third-party summons as of June 23, 2006.  Compare Tsuha Decl. ¶ 11 with Second Tsuha Decl. ¶ 5(a).  Because it is possible that the Government received records pertaining to disbursement and receipt of the IndyMac Bank loan proceeds from a source other than IndyMac Bank, Respondents have not shown the "specific facts and evidence" of bad faith necessary to require an evidentiary hearing on whether the Government summonses were issued for some illegitimate purpose.  See Tanoue, 94 F.3d at 1345.  Even assuming that Tsuha was mistaken about what documents were in the Government's possession, a mere mistake is insufficient to demonstrate bad faith use of the summons process on the part of the Government.

Similarly, Tsuha's statement in her second declaration that the Government did not receive documents from MasterCard International responsive to a third-party summons does not demonstrate the Government's bad faith in issuing the summons. While the Government already had information in its possession concerning Respondents' MasterCard, that information could have possibly been received from another source.  In any event, this evidence does not demonstrate that the Government issued the summonses to Respondents for some illegitimate purpose.

Nor have Respondents demonstrated the Government's bad faith in issuing the summonses to them merely because Tsuha characterized a third-party summons to First Hawaiian Bank as being a "no notice summons" asking the bank only to provide the Government with the identity of accounts held by Respondents. See Second Tsuha Decl. ¶ 5(d).  Although the actual summons to First Hawaiian Bank asked for much more detail, Respondents fail to show that the Government is proceeding for some illegitimate purpose.  At most, Respondents have shown that Tsuha made a mistake about the nature of the summons.  Tsuha had to know that the court could easily examine the summons, and this knowledge makes it highly improbable that she was attempting to mislead the court.

        B.    The Government Was not Required to Detail the Administrative Steps Taken to Comply with the <u>Internal Revenue Code</u>.

Respondents argue that, notwithstanding Tsuha's declaration indicating that the Government complied with all necessary administrative steps required by the Internal Revenue Code, the court should not enforce the summons because Tsuha did not detail those steps.  Respondents cite no any authority indicating that such detail is necessary.  To the contrary, this court has enforced summonses when agents merely state that all the administrative steps have been "substantially followed." <u>United States v. Trenholm</u>, 2005 WL 2249097, *2 (D. Haw. July 28, 2005).

        C.    Respondents Have Shown no Applicable Defense or Privilege that Excuses Compliance with the <u>Summons</u>.

Respondents disagree with the Magistrate Judge's determination that they failed to provide any factual support for their numerous defenses and privileges.  The court agrees with the Magistrate Judge on this point.  Respondents provided no support for the various privileges and defenses asserted in their declarations.

Respondents' intent to invoke various defenses, including their Fifth Amendment rights, did not justify their failure to appear at the scheduled date and time in the

11

summonses.[1]  The Magistrate Judge correctly ruled that Respondents cannot invoke a blanket Fifth Amendment privilege. Instead, that privilege must be asserted on a question-by-question basis.  United States v. Drollinger, 80 F.3d 389, 392 (9th Cir. 1996) ("Thus, the only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis.  A taxpayer must present himself for questioning, and as to each question elect to raise or not to raise the defense.  The District Court may then determine by considering each question whether, in each instance, the claim of self-incrimination is well-founded." (quotations and citations omitted)).

Respondents show no error in the Magistrate Judge's determination that Eco Financial has no Fifth Amendment privilege.  See Braswell v. United States, 487 U.S. 99, 109-10 (1988) ("[T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity.  Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads

---

[1] On appeal, Respondents argue that they did not fail to appear on July 5 and 14, 2006, as required by the summonses. Based on a letter from their attorney that was written after those dates, Respondents say that there was never an agreement as to when they were supposed to comply with the summonses. However, in the absence of such an agreement, Respondents were required to comply with the summonses as written.  Moreover, there is no dispute that Respondents have not arranged to meet or met with the Government in compliance with the summonses.

12

to certain obligations, including the duty to produce corporate records on proper demand by the Government.  Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation.  Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation--which of course possesses no such privilege." (internal citations omitted)).

>            D.   Respondents Fail to Show that Service of the
>                 Summons on Eco Financial Was Ineffective.

Respondents' final argument challenges the effectiveness of the Government's service of the summons on Eco Financial.  Respondents say that the service was not effective because the summons was served on Liddell, who is allegedly not an Eco Financial agent.  See Declaration of Respondent Morgan Liddell (July 6, 2007) ¶ 4 ("I am not an agent of EcoFinancial.").  However, as the Magistrate Judge found, the Government has submitted evidence indicating that Liddell is an Eco Financial agent and is authorized to act on its behalf.  Liddell used an Eco Financial credit card issued by Hallmark Trust Limited ending in "0708" to purchase over $2,100 worth of jewelry.  See Exs. 1 and 2 to Reply (indicating that Liddell used an Eco Financial credit card to purchase jewelry at Jim Saylor Jewelers).  Although Respondents claim that Liddell has no authority to act on behalf of Eco Financial, they do not explain

13

how Liddell is authorized to use Eco Financial's credit card while allegedly unable to act on Eco Financial's behalf.  At best, Liddell argues that he has "some relationship" with hundreds of companies.  The court, in determining that the evidence suggests that Liddell is, in fact, an Eco Financial agent, is not basing that determination on a mere "relationship" with it.  Liddell is not merely using a credit card with the company's logo on it.  Liddell is actually using an Eco Financial credit card to purchase jewelry.  This strongly suggests that Liddell is authorized to act on Eco Financial's behalf.

In Tsuha's original declaration, she indicates that Hallmark Trust is an entity that allows people to participate in an offshore, tax-avoidance scheme.  Tsuha Decl. ¶¶ 16, 17, 19.  Tsuha indicates that a typical scheme involves a transfer of money to an offshore trust, which then issues a credit card to allow a person access to the offshore funds.  Id. ¶ 16.  Exhibits 1 and 2 to the Government's Reply indicate that Liddell may be using a credit card issued to Eco Financial as part of such a scheme to access money held by Hallmark Trust Limited.  Exhibit 1 indicates that the Eco Financial credit card was being used to purchase gas, food, clothing, and travel.  Exhibit 2 indicates that Liddell was actually using the Eco Financial credit card.  Accordingly, information from Eco Financial may be useful for the Government to determine how much money Respondents made in 2002

and 2003.  On the present record, Respondents have failed to show that service on Eco Financial was insufficient.

IV.     CONCLUSION.

Based on the forgoing, and for the reasons set forth in the well-reasoned F&R, the court adopts the F&R and enforces the summonses without holding an evidentiary hearing.

IT IS SO ORDERED.

Dated:  Honolulu, Hawaii, August 21, 2007.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States of America v. Liddell, et al., Civil No. 07-00310 SOM/KSC; Order Granting United States' Petition to Enforce Summonses